# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ALLSTATE INSURANCE COMPANY     \*

v.     \*     Civil No. CCB-19-696

WILLIAM BAKER, *et al.*     \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Allstate Insurance Company ("Allstate") brought this action against defendants[1] William Baker; Stanley and Rhoda Rochkind (the "Rochkind Insureds"); Charles Runkles; Jack Novograd; N.B.S., Inc.; N-4, Inc.; and Dear Management & Construction Company. (Compl., ECF 1). Allstate requests a declaratory judgment against the Rochkind Insureds that Allstate's potential liability in an underlying state action (the "Underlying Suit," Case No.: 24-C-18-000554) is limited to a specific pro rata allocation based on its time on the risk. The Underlying Suit remains pending in Maryland state court.

Now before the court is Baker's motion to dismiss or, in the alternative, to stay. (ECF 24). The motions are fully briefed, and no oral argument is necessary. For the reasons stated below, the motion to dismiss will be denied and the motion to stay will be granted.

## BACKGROUND

On or about February 1, 2018, Baker filed suit in the Circuit Court of Maryland for Baltimore City, seeking damages for injuries allegedly sustained from exposure to lead paint at a

---

[1] In the case caption, Allstate names these parties as defendants, but elsewhere refers to several of them as "parties of interest." For simplicity, the court will refer to these parties as "defendants."

1

residential property located at 839 Glenwood Avenue in Baltimore, Maryland. (State Court Complaint, Compl. Ex. A, ECF 1-1). Baker named as defendants the putative owners of 839 Glenwood Avenue: the Rochkind Insureds; Charles Runkles; Jack Novograd; N.B.S., Inc.; N-4, Inc.; and Dear Management & Construction Company (collectively, the "state court defendants"). (*Id.* ¶¶ 2–3, 5). In the State Court Complaint, Baker alleges that from his birth in December 17, 1998, until 2003, he "resided, visited, and spent significant amounts of time at 839 Glenwood Ave.," (*id.* ¶¶ 1, 3), which contained "peeling, flaking and chipping paint and paint containing lead pigment" throughout the property, (*id.* ¶ 7).

For some of this period, the Rochkind Insureds were covered by an Allstate insurance policy. Pursuant to Personal Umbrella Policy No. 028737150 (the "Insurance Policy"), Allstate provided to the Rochkind Insureds personal liability defense and indemnity coverage up to $5,000,000, with coverage beginning on June 13, 1988, and ending on June 13, 2000, when the policy was canceled. (Compl. ¶¶ 10, 15). On June 13, 1999, an exclusion of coverage for claims alleging lead exposure came into effect. (*Id.*).

Allstate filed suit in this court, seeking declaratory judgment regarding its liability for damages Baker may obtain against the Rochkind Insureds. Specifically, Allstate asserts that it has no obligation to indemnify the Rochkind Insureds for any damages arising from Baker's alleged exposure after June 13, 1999. (*Id.* ¶ 16).[2] Pursuant to *Pennsylvania Nat'l Casualty Ins. Co. v. Roberts*, 668 F.3d 106 (4th Cir. 2012), Allstate argues that it is entitled to a pro rata allocation of any potential responsibility, and requests that the court issue a declaratory judgment that its share of responsibility for any damages against the Rochkind Insureds that may arise in

---

[2] While the Complaint states that "Allstate contends it has no obligation to defend and/or indemnify the Rochkind Insureds," (Compl. ¶ 16), this appears to be a typographical error. Elsewhere, Allstate does not argue that it has no duty to defend. (*See, e.g.*, Opp'n at 16, ECF 25).

the Underlying Suit is limited to 9.55 percent of the total of any judgment for Baker, with the Rochkind Insureds liable for the remaining 90.45 percent. (*Id.* ¶¶ 23, 25). The state court defendants filed an answer, (ECF 18), and Baker moved to dismiss or stay this action.[3]

## ANALYSIS

This court has diversity jurisdiction over the case, 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000. The suit is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as the sole relief sought in the complaint is the declaration of the parties' rights under the Insurance Policy. The central question presented by Baker in his motion is whether the court should exercise its discretion to issue a declaratory judgment.

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation and quotation marks omitted). Even where a declaratory judgment action "otherwise satisfies subject matter jurisdictional prerequisites," the district court "possess[es] discretion" in determining whether to entertain the suit. *Id.* at 282; *see also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). The Fourth Circuit "has long recognized the discretion afforded to district courts in determining whether to render declaratory relief." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 297 (4th Cir. 2005) (citation and quotation marks omitted). This discretion is especially "crucial when . . . a parallel or related

---

[3] The status of the other parties to this action (Charles Runkles; Jack Novograd; N.B.S., Inc.; N-4, Inc.; and Dear Management & Construction Company) is not entirely clear. Allstate alleges in its complaint that several of these parties are entities "of which Stanley Rochkind is a stockholder/member/partner/manager," and that they are "part[ies] of interest," (Compl. ¶¶ 3–9), but does not allege additional facts tending to support that Allstate had a contractual relationship with these parties. In the Answer, several of the state court defendants stated that their status as parties of interest is a question of law. (Answer at 1–2, ECF 18). As Allstate only requests a declaratory judgment with respect to its responsibilities to the Rochkind Insureds, however, the court need not further discuss Charles Runkles; Jack Novograd; N.B.S., Inc.; N-4, Inc.; and Dear Management & Construction Company.

3

proceeding is pending in state court." *Id.*

In determining whether to exercise jurisdiction in a declaratory judgment action, the district court must "weigh considerations of federalism, efficiency, and comity." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)). The Fourth Circuit has articulated four factors for district courts to consider when determining whether to abstain from exercising jurisdiction over a declaratory judgment action during the pendency of a parallel state proceeding:

> (1) [W]hether the state has a strong interest in having the issues decided in its courts; (2) whether state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere procedural fencing, in the sense that the action is merely the product of forum-shopping.

*Kapiloff*, 155 F.3d at 493–94 (citing *Nautilus Ins.*, 15 F.3d at 377) (quotation marks omitted).[4,5]

Here, the first *Kapiloff* factor—whether the state has a strong interest in resolving this issue in its courts—does not weigh against exercising jurisdiction. A state's interest in deciding an issue is "not particularly significant" where "[a] federal court would be unlikely to break new ground or be faced with novel issues of state interest." *Id.* at 494; *see also Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) ("[A]lthough only state law is at issue, the relevant state law is not problematic or difficult to apply, which weakens somewhat the state's

---

[4] To the extent that Allstate argues, under *Nautilus*, that there is "a strong presumption that a federal court should exercise jurisdiction in a declaratory judgment action" further constraining the court's discretion here, (*see* Opp'n at 15, ECF 25), it is mistaken. In *Centennial Life Ins. Co. v. Poston*, the Fourth Circuit abrogated *Nautilus* to the extent that it "implied further constraints on court discretion" beyond "considerations of practicality and wise judicial administration." 88 F.3d 255, 257–58 (4th Cir. 1996) (quoting *Wilton*, 515 U.S. at 288).

[5] There appears to be some confusion about which Federal Rule of Civil Procedure the court should use to review Baker's motion. (Opp'n at 6–10). Notwithstanding Baker's assertion on the first page of his motion that he seeks dismissal or a stay "pursuant to Fed. R. Civ. P. 12," (ECF 24), the substance of the motion makes clear that he actually requests that the court decline to exercise jurisdiction over this case, (Mot. at 5–6, ECF 24-1). The court's discretion to exercise or decline jurisdiction pursuant to the Declaratory Judgment Act is an abstention doctrine, *see Poston*, 88 F.3d at 257, and Baker's motion does not implicate Rule 12.

interest in having these issues decided in state court."). The issue Allstate asks the court to resolve is not "novel"; as the Fourth Circuit noted in *Roberts*, it is well-settled that "[i]n lead paint or continuous trigger cases . . . Maryland courts engage in a 'pro rata by time-on-the-risk allocation' of liability." *See Roberts*, 668 F.3d at 113 (collecting cases). Accordingly, this factor does not weigh against exercising jurisdiction.

The second *Kapiloff* factor asks the court to consider whether the state court can resolve the issue more efficiently. The primary focus in evaluating efficiency concerns is "whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. This requires consideration of "the scope of the pending state court proceeding," including whether all parties' claims can be successfully adjudicated in state court and whether all necessary parties have been joined in the state action. *Id.*; *Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992). Here, efficiency concerns cut both ways. The pro rata allocation issue will not necessarily be addressed in the Underlying Suit; indeed, Allstate is not even named as a defendant in that case. (*See generally* State Court Complaint, Compl. Ex. A). For the state court to decide the issue, Allstate would need to either intervene in the Underlying Suit or initiate a separate action in state court. But, as Baker points out, it could be inefficient for the court to decide questions of indemnity prior to resolution of the Underlying Suit, as any declaratory judgment regarding Allstate's responsibility would be moot if the Rochkind Insureds prevail in state court. *See Mitcheson*, 955 F.2d at 239 ("[A] federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action.").

Allstate also argues that the interest of efficiency would be better served if the court were to decide the pro rata allocation issue *now*, as opposed to after resolution of the Underlying Suit,

so that Allstate may better shape a settlement strategy. In so arguing, Allstate relies on *Nautilus*, in which the Fourth Circuit suggested that "the nature of the duties a liability insurer owes its insured makes such disputes particularly appropriate for early resolution in a declaratory action," as a delay in deciding this issue "would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs." *See Nautilus*, 15 F.3d at 376 (citation and quotation marks omitted). Baker counters that it "defies credulity" for Allstate to suggest that the court's failure to decide this issue would prevent it from shaping a settlement strategy, as Allstate has raised this argument in three similar cases before this court but nevertheless settled each case before resolution of the pro rata allocation issue.[6] Efficiency concerns thus appear to cut in both directions.[7] On balance, the court finds that the second *Kapiloff* factor does not weigh in favor of or against the court's exercise of jurisdiction over the matter.

The third factor asks the court to consider whether exercising jurisdiction would create "unnecessary entanglement between the state and federal courts." *Kapiloff*, 155 F.3d at 493–94 (citation and quotation marks omitted). Concerns about entanglement primarily turn on the preclusive effect the declaratory judgment action will have on the state action. *See Mitcheson*, 955 F.2d at 239–40. Allstate argues that there is no possibility of entanglement, as the tort claims raised in the Underlying Complaint are separate from the issue of insurance coverage. Indeed, Baker did not name Allstate as a defendant in the Underlying Suit, nor did he make any

---

[6] Baker cites the following cases, which bear striking similarities to this case: *Allstate Insurance Company v. DeAngelo Harper, et al.*, Civil Action No. GLR-17-2808; *Allstate Insurance Company v. Tiyon Campbell, et al.*, Civil Action No. CCB-18-1825; *Allstate Insurance Company v. Damon Fleary, et al.*, Civil Action No. CCB-18-2129. Indeed, all three cases were declaratory judgment actions in which Allstate asked the court to issue a declaratory judgment that its share of potential liability in an underlying state court lead paint exposure case was limited to a pro rata allocation based on time on the risk. Allstate raised its argument regarding settlement strategy in those cases as well, (*Harper*, ECF 40 at 14; *Campbell*, ECF 14-1 at 14; *Fleary*, ECF 19 at 13–14), but settled those cases prior to the court's resolution of the issue, (*Harper*, ECF 42; *Campbell*, ECF 17; *Fleary*, ECF 23).
[7] The court notes Allstate's argument that the pro rata allocation issue raised involves a straightforward and settled matter of Maryland law. Accordingly, it seems likely that experienced counsel on both sides will be able to factor that calculus into settlement negotiations without much difficulty.

allegations related to the Insurance Policy. *See Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 968 (4th Cir. 1994) (no unnecessary entanglement where the insurance issues were not yet being litigated in state court when the insurer filed its declaratory judgment action).[8]

There is, however, an aspect of Allstate's requested relief which could lead to unnecessary entanglement with the Underlying Suit. Allstate requests a declaratory judgment that it is only responsible for 9.55 percent of any potential damages imposed on the Rochkind Insureds, a percentage that presumably represents the proportion of the time period Baker was exposed to lead where the Insurance Policy was also in effect. Such a calculation requires the court to determine not only how long the Rochkind Insureds were covered by the Insurance Policy, but also how long Baker was exposed to lead. While the former determination relies on a straightforward interpretation of the contract, the latter is more complicated. Allstate appears to assume that the exposure period began at Baker's birth on December 17, 1998, and continued through 2003. This is not an unreasonable assumption, as Baker alleges in the Underlying Suit that he spent significant time at 839 Glenwood Avenue during that period. But the period during which Baker was exposed to lead might not, in fact, be coextensive with the period he spent time at the property. Baker suggests as much in his motion. He states that it has not yet been determined in the Underlying Suit "when Mr. Baker's lead poisoning took place," "the period of time during which Mr. Baker had injurious exposure to lead at the Subject Premises," and "whether Mr. Baker incurred damages caused by injurious exposure to lead at the Subject Premises after June 13, 1999." (Mot. at 4–5, ECF 24-1). If the start and end dates of the exposure period differ from the ones assumed in Allstate's calculation, Allstate's share of responsibility

---

[8] Baker's reliance on cases for the proposition that a court should abstain from declaring a party's duty to indemnify, (Mot. at 7–9), is inapposite, as Allstate is not arguing that it has no duty to indemnify the Rochkind Insureds. Rather, Allstate is arguing that its responsibility for any future damages against the Rochkind Insureds is limited to 9.55 percent.

7

for damages against the Rochkind Insureds could be larger (or smaller) than 9.55 percent.

In *Roberts*, the Fourth Circuit case on which Allstate relies heavily to support its request for a declaratory judgment, the state court plaintiff (Roberts) raised a similar argument in response to an insurer's request for a federal declaratory judgment on pro rata allocation. *See* 668 F.3d at 116. Roberts argued that the federal district court should not have used her birth as the starting point of the exposure period, as she was not actually exposed to lead until she was twenty months old. *Id.* In rejecting Roberts's argument, the Fourth Circuit relied heavily on the evidence established at the underlying state trial and on Roberts's longstanding position that she had been exposed to lead since birth. *Id.* at 116–19. Here, however, there is neither a completed state trial nor evidence that Baker has already adopted the position that his exposure began at birth. *Roberts* thus does not mandate the exact pro rata allocation Allstate seeks.

If the court were to exercise jurisdiction over this matter and grant the requested relief, it would necessarily need to determine when Baker's exposure period began and ended. Such a declaration made before the state court has considered the issue could lead to unnecessary entanglement. Accordingly, the third *Kapiloff* factor weighs against exercising jurisdiction.

Finally, the fourth *Kapiloff* factor asks whether the federal action is mere "procedural fencing." *Kapiloff*, 155 F.3d at 493–94 (citation and quotation marks omitted). Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Great American Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006). Of course, the insurance issue was not pending in the state court when Allstate filed the declaratory judgment action. But in *Fuscardo*, the Fourth Circuit held that a federal declaratory action may have been used as procedural fencing to "acquire the most hospitable forum" where (1) the underlying tort action

8

was already pending in state court; (2) the plaintiff insurer knew that a defendant in the underlying tort action would lodge an insurance claim against it; (3) the plaintiff insurer knew that coverage issues were bound to arise in the underlying tort proceedings; and (4) the plaintiff insurer "attempted to have the coverage issue determined by the federal court before the issue arose in the context of the state proceedings." *Fuscardo*, 35 F.3d at 968–69. A similar sequence of events occurred here, providing some evidence of procedural fencing. Accordingly, the court finds that the fourth *Kapiloff* factor weighs slightly against exercising jurisdiction.[9]

Considered together, the *Kapiloff* factors suggest that the court should abstain from exercising jurisdiction over this action at this time. Moreover, although not raised by Baker, the court notes that this declaratory judgment action might not yet present an actual controversy of "sufficient immediacy and reality" to confer subject matter jurisdiction on this court.[10] *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. All. Roofing & Sheet Metal, Inc.*, No. CIV. WDQ-12-1427, 2013 WL 1120587, at *3 (D. Md. Mar. 14, 2013) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).[11] In a case quite similar to this one, where Allstate and the Rochkind Insureds were also parties, Chief Judge Bredar of this court recently concluded that "Allstate's declaratory judgment action [was] premature," noting:

> Without knowing the answers to essential factual questions—including whether the Rochkinds are liable to [the state court plaintiff] at all and whether, if liable, that liability derives from damages incurred after Allstate eliminated coverage for lead-related claims—any declaratory judgment issued by this Court would not be conclusive, but would rather operate only as an opinion advising what the law

---

[9] As further evidence of procedural fencing, Baker argues that Allstate filed this action in federal court in an effort to avoid Maryland's "*Brohawn* rule." The applicability of *Brohawn*, however, is not clear. In *Brohawn v. Transamerica Ins. Co.*, the Maryland Court of Appeals held that "where . . . the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment." 276 Md. 396, 406 (1975). As the court has explained, however, the issue of insurance coverage is not currently before the state court.

[10] In their Answer, the state court defendants "[d]en[ied] that there is an actual and immediate controversy between the Rochkinds and the Plaintiff with respect to Allstate's duties and obligations under the policy at issue," (Answer ¶ 20), but did not discuss the issue further.

[11] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

9

would be upon a hypothetical state of facts.

*Allstate Ins. Co. v. Preston*, No. CV JKB-19-0429, 2019 WL 3067918, at *2 (D. Md. July 12, 2019) (citation and quotation marks omitted). The balance of the *Kapiloff* factors, combined with the subject matter jurisdiction concerns raised by Judge Bredar, persuade the court that exercising jurisdiction over this matter at this time would be unwise.[12] Mindful that it would be inefficient to dismiss this action and require Allstate to refile later, and in light of the fact that the court's entanglement concerns would lessen once the Underlying Suit has been resolved, the court believes a stay is appropriate here. Accordingly, the court will exercise its discretion to stay this action.

## CONCLUSION

For the foregoing reasons, Baker's motion to dismiss will be denied, but his motion to stay will be granted. This case will be stayed pending resolution of Case No.: 24-C-18-000554 in the Circuit Court of Maryland for Baltimore City. A separate order follows.

3/10/20
Date

Catherine C. Blake
United States District Judge

---

[12] Allstate offers *Allstate Insurance Company v. Shakia Blue, et al.*, No. CV ADC-18-1199, 2019 WL 266281, at *1 (D. Md. Jan. 18, 2019), as an example of the court's ability to exercise jurisdiction over a similar matter. In that case, however, the court expressly noted that the state court plaintiff did not contest Allstate's pro rata allocation calculation, (*id.*, ECF 48 at 7), thus alleviating entanglement concerns.